nature, then the Charles Campbell warrant, survey and patent thereon conveyed the land to the center of this river or creek, and therefore the Thomas Reese patent was a nullity.

We do not find anything in the other assignments of error requiring special discussion. They are all founded upon the opinion and judgment of the court. And in our opinion the court was fully warranted in entering the judgment non obstante veredicto upon the evidence and the law applicable thereto. After a patient examination of the testimony and the cases relied upon by the plaintiff and the opinion of the court below, we think that opinion fully justifies the judgment.

The assignments of error are all dismissed and the judgment is affirmed.

ORLADY, J., dissents.

---

# Notley, Appellant, *v.* Shoemaker.

*Contract—Optional agreement—Sale of minerals.*

On the day that a duly recorded option for the sale of minerals was to expire a tender of the purchase price was made, a deed demanded, but the demand was not complied with. Shortly thereafter the vendor tendered a general warranty deed in compliance with the requirements of the contract. This was rejected because of ejectment proceedings which had been instituted by a third party and were then pending. Subsequently the owner of the option assigned it to a third person. At the time of the assignment the owner of the option stated to the assignee that he did not claim to have any title to the property. *Held,* that the assignment of the option passed no interest to the assignee.

In the above case the six judges who heard the case being equally divided in opinion, the decree of the lower court was affirmed.

Argued May 3, 1904. Appeal, No. 79, April, T., 1904, by plaintiff, from order of C. P. Cambria Co., Dec. T., 1902, No. 58, dismissing exceptions to auditor's report in case of use D. E. Notley v. F. A. Shoemaker. Before RICE, P. J., ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Scire facias sur mortgage.

Exceptions to report of H. B. Mainhart, Esq., auditor.

The report of the auditor was as follows:

The evidence that has been offered before the auditor discloses the fact that F. A. Shoemaker, the defendant, on January 10, 1895, purchased from J..L. Baum, the coal, stone, fire clay and other minerals in and under 100 acres of land in Susquehanna township, Cambria county, and on the same day the said F. A. Shoemaker also did purchase from the said J. L. Baum, the surface of two pieces of land in Susquehanna township, Cambria county, one peice containing twelve acres and eighty perches and the other piece containing forty acres and sixty perches.    The above two deeds were recorded in Cambria county on November 21, 1898, the first in deed book, vol. 116, page 415, and the second in Deed Book, vol. 119, page 119.

On June 18, 1895, F. A. Shoemaker gave a mortgage covering the above tracts of land purchased from J. L. Baum to J. A. Blair and Joseph A. Gray, for the sum of $1,400.    This mortgage is recorded in Cambria county in mortgage book, vol. 26, page 673.    Joseph A. Gray one of the mortgagees on December 10, 1898, assigns all his right, title and interest in said mortgage to M. D. Bearer, assignee of John A. Blair.    This assignment is of record in mortgage book, vol. 37, page 640.    M. D. Bearer assignee, of John A..Blair then assigns all his right, title and interest in the said mortgage to John A. Blair, which assignment is dated July 31, 1902, and of record in mortgage book, vol. 40, page 168.    John A. Blair then assigns all his right, title and interest in the said mortgage to D. E. Notley, plaintiff in the writ.    This assignment is dated August 11, 1902, and is of record in mortgage book, vol. 40, page 165. Scire facias is then issued by D. E. Notley to No. 409, September term, 1902, and judgment is entered thereon for the sum of $1,145, with interest from November 10, 1902.    Levari facias is issued therefrom to No. 58, December term, 1902, and on December, 1, 1902, the property was sold by the sheriff to Rembrandt Peale, for the sum of $2,901.

On July 8, 1902, F. A. Shoemaker enters into an optional agreement with E. W. Smith for the purchase of the coal in and under fifty-three acres and 125 perches of the above land in Susquehanna township, the consideration to be $35.00 per acre and to be paid as follows: $10.00 in hand and the balance on July 28, 1902.    Said agreement is of record in Cambria county

in deed book, vol. 147, page 206.   This agreement was assigned by E. W. Smith to E. C. Brown, on July 17, 1902, and bears the indorsement, " On July 28, 1902, I tendered to F. A. Shoemaker, Esq., the balance of the purchase money in full and demanded a good and sufficient deed."

John E. Evans, attorney for E. C. Brown.

Said agreement is hereto annexed and marked Exhibit A.

At the time of the tender of the money by John E. Evans to F. A. Shoemaker the latter was unable to deliver a deed in compliance with the requirements and conditions of said contract and he so states this in his petition to the court, entered to No. 58, September term, 1902, E. D., which said petition has been offered in evidence.   At a later date, however, Mr. Shoemaker tenders a general warranty deed in compliance with the requirements of the contract to Mr. Evans.   This deed under directions of Mr. Evans was executed to the Beech Creek Coal and Coke Company, and was refused by Mr. Evans as attorney for Mr. Brown because of ejectment proceedings which had been instituted by D. E. Notley to recover possession of a certain part of the property which he claimed by an agreement with Susannah Lloyd.

On December 30, 1902, E. C. Brown assigns the optional agreement originally between E. W. Smith and F. A. Shoemaker to D. E. Notley for the consideration of $350.   This assignment was sent to W. H. Sanford at the National Bank in Patton and was accompanied by a letter from E. C. Brown to D. E. Notley, which letter has been offered in evidence and marked Exhibit G.   The last paragraph of this letter is as follows : " I wish to advise you, however, that I do not claim to have any title to this property."   Upon the delivery of the above assignment to W. H. Sanford the consideration is given to an employee of Mr. Brown and in turn received by him.

## II. OPINION.

The fund in the hands of the sheriff for distribution arises from the sale of certain real estate situate in Susquehanna township, Cambria county, and which was sold as the property of F. A. Shoemaker on writ of levari facias entered to No. 58, December term, 1902.

Different liens are entered of record against F. A. Shoemaker and no objections were made before the auditor to the payment of any of them, and after the payment of the costs of the sale and of the audit these liens are directed to be paid as per schedule of distribution attached.

After the payment of the liens and the costs of sale and of the audit there is a surplus left in the hands of the sheriff for distribution, and this surplus is claimed by Rembrandt Peale, the sheriff's vendee, D. E. Notley, plaintiff in the writ, and F. A. Shoemaker, defendant in the writ.

On the part of Rembrandt Peale it is claimed by counsel that he is entitled to the fund for the reason, that having purchased all the right, title and interest of Mr. Shoemaker in the property such sale and conveyance would carry with it the right to any surplus fund which under other circumstances might have gone to F. A. Shoemaker.

On the part of D. E. Notley it is claimed by counsel that having succeeded to all the right, title and interest of E. C. Brown in the optional agreement between F. A. Shoemaker and E. W. Smith, dated July 8, 1902, having taken an assignment for valuable consideration, he is entitled to receive the money that under other circumstances would have gone to Mr. Brown.

On the part of F. A. Shoemaker it is claimed by counsel that he is entitled to the surplus fund for the reason that he did in so far as possible fulfill the requirements and conditions of the optional agreement, and that the said agreement expired by its own terms and limitations by reason of the failure of E. C. Brown to pay the purchase money.

Taking up the positions of the counsel in the order given above the auditor can find no ground in the law to support the claim of Rembrandt Peale, the purchaser at sheriff's sale. The sale was on a mortgage given June 18, 1895, and recorded April 11, 1896. Upon this mortgage scire facias and levari facias was issued and the property was sold. While it is true that an optional agreement intervened between the entry of judgment and the sale of the property it could in no wise work such a result, and if this claim was allowed then the vendee at any sheriff's sale would not only receive title to the property purchased but would also have the right to any surplus remain-

588 NOTLEY, Appellant, v. SHOEMAKER.

Auditor's Report. [25 Pa. Superior Ct.

ing after the payment of the liens against the defendant. The claim, therefore, of Rembrandt Peale to the surplus of the fund after the payment of the liens is without foundation in the law, and is not allowed.

As to the claim of D. E. Notley for the surplus fund owing to the interest which he purchased in the optional agreement, there is no question but what he would be entitled to the surplus after the payment to F. A. Shoemaker from the fund for distribution the contract price in the optional agreement had the optional agreement not expired. This position is a well established one in the law and cases cited in support of it are Siter's Appeal, 26 Pa. 178 ; Frick's Appeal, 101 Pa. 485; People's Street Railway Co. v. Spencer, 156 Pa. 85–91.

As to the claim of counsel for F. A. Shoemaker that the optional agreement had expired by the failure of E. C. Brown to pay the purchase money it is this claim that counsel differ materially in their views. It is contended that E. C. Brown had fulfilled his part of the agreement by the tender of the purchase money which his attorney, John E. Evans, made to F. A. Shoemaker, record of which is indorsed on the back of the optional agreement, and that by reason of this tender he was to be considered as still holding the equitable interest in the property sold by the sheriff and that by reason of the assignment of his right, title and interests in the optional agreement for a valuable consideration to D. E. Notley, Notley then becomes the equitable owner and therefore entitled to the surplus fund.

It is true that the purchase money was tendered Mr. Shoemaker and that the deed at that time was not forthcoming but it is evident that Mr. Shoemaker was endeavoring to comply in so far as possible with the terms of the optional agreement for it was but a short time afterwards that he tendered a deed of general warranty to John E. Evans, attorney for E. C. Brown. This deed met all the requirements of the agreement and was the best deed that Mr. Shoemaker could give. He was complying strictly with the terms of his contract and it was then for Mr. Brown to accept this deed and pay over to Mr. Shoemaker the purchase money according to the contract. Upon his refusal to accept this deed and pay over the money, the contract in so far as he could claim any rights under it became null and void. Mr. Brown knew this from his counsel

and he disclaims any right or interest in the property. When he sends the assignment of the optional agreement to Mr. Notley to receive in turn the consideration of $350 for the same, he states particularly in a letter to Mr. Notley which said letter accompanied the assignment that he did not claim to have any interest in the property. All of Mr. Brown's actions can bring one to the only conclusion that he had allowed the optional agreement to expire when he refused to pay the purchase money.

The assignment of this optional agreement to D. E. Notley could in no way under the circumstances vest in Mr. Notley any interest in the agreement. All the circumstances under which the assignment was given, the time that had elapsed from the date of the agreement, the sale of the property by the sheriff, all of this was sufficient to have placed Mr. Notley on his guard, and it was easy for him to find the true status of the contract, and that he was acquiring no right in the property. His purchase therefore of the assignment can in no manner revive an agreement which had expired and his claim to the surplus fund in the hands of the sheriff is not allowed.

The fund arising from the sale of the property after the payment of liens and the costs of sale and of the audit is therefore awarded to Mr. Shoemaker, the defendant in the writ, as per schedule of distribution attached.

On exceptions the court filed the following opinion :

There is but one question for the determination of this court under the exceptions as they now stand, to the finding and report of the auditor: " Was the optional agreement between F. A. Shoemaker and E. W. Smith in force and binding upon the parties at the date of the sheriff's sale, December 2, 1902?"

The auditor found as a fact that it was not in force and that the assignor of D. E. Notley made no claim to any interest in the property after the tender by Mr. Shoemaker of a deed from himself to the Beech Creek Coal Company. In this conclusion of fact we concur. E. C. Brown, the holder of the optional agreement, had for his agent and attorney John E. Evans, Esq. Through Mr. Brown's instructions Mr. Shoemaker prepared and tendered a deed from himself to the Beech Creek Coal & Coke Company for the land sold at sheriff's sale and out of which

sale the fund for distribution arises.   Mr. Brown's agent and attorney, John E. Evans, refused to accept the deed and advised Mr. Brown that he had no further claim on the property and could not compel the transfer.   Mr. Brown seemed to acquiesce and thenceforth to have treated the transaction as closed. After the sheriff's sale, when it became evident that the liens would not equal the proceeds, Mr. Notley seemingly undertook to speculate on the fund for distribution and in the course of his speculation he purchased all the interest which Mr. Brown had in the optional agreement, and paid Mr. Brown several hundred dollars therefor.   It was, therefore, to the manifest interest of Messrs. Notley and Brown to establish the validity and binding force of the optional agreement at the time of the sheriff's sale.   The assignment from Brown to Notley was made several weeks after, and the evidence taken before the auditor discloses the fact that Mr. Brown declared in writing at the time he delivered the assignment to Mr. Notley, that he had no claim upon this property.   This writing was produced, offered in evidence and received without objection.   As a statement made by a grantor against the validity of the grant and the interest of the grantee, it might not be evidence but we regard it as material to the extent of showing that E. C. Brown had surrendered whatever rights he might have claimed under the optional agreement by reason of his tender of the purchase money, and as evidence tending to show or prove that Mr. Notley took the assignment of the option with his eyes open.

We regard the transaction between Brown and Notley as an attempt to revive an option which had been treated as void and by so doing to speculate upon the misfortunes of a debtor. Under such a view, we must concur in the findings and conclusions of the auditor.

And now, October 6, 1903, exceptions are overruled and report confirmed.

*Error assigned* was in dismissing exceptions to auditor's report.

*M. D. Kittell*, for appellant.

*Alvin Evans*, of *Evans, Leech & Evans*, for appellee.

584, (1904).]                    Opinion of the Court.

PER CURIAM, July 28, 1904:

The six judges who heard the case being equally divided in opinion the decree is affirmed.

---

# Miller, Appellant, *v.* Cambria County.

*Practice, C. P.—Amicable action—Agreement—Case stated.*

Where two persons cause to be filed in the records of the court of common pleas as of a certain term, a paper, the caption of which shows that the parties have assumed the positions of plaintiff and defendant, and the body of the paper stipulates that the cause shall be tried by the court without a jury, the court will construe the paper as an agreement for an amicable action under the Act of June 13, 1836, P. L. 568, and this is so, although the parties may have designated the paper as a case stated.

*Practice, C. P.—Trial by court without a jury—Exceptions—Act of April 22, 1874, P. L. 109—Quashing appeal.*

An appeal taken before exceptions have been filed to the decision of the court in a case tried by the court without a jury, will be quashed, unless the order of the court below is so drawn as to raise the presumption that the court intended the prothonotary to enter a final and absolute judgment forthwith, and to deny to the parties the right to file exceptions, and to a hearing thereon.

Argued May 3, 1904.   Appeal, No. 104, April T., 1904, by plaintiff, from judgment of C. P. Cambria Co., Sept. T., 1903, No. 467, for defendant on case tried by the court without a jury in suit of E. L. Miller v. Cambria County.   Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.   Appeal quashed.

Agreement for amicable action styled by the parties on case stated.

The opinion of the Superior Court states the case.

The court entered judgment for defendant.   No exceptions were filed to the decision of the court.

No assignments of error were printed in appellant's paper-book.

*S. L. Reed*, with him *Jacob Zimmerman*, for appellant.

*William Davis*, with him *M. D. Kittell*, for appellee.